**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000507
23-OCT-2023
08:31 AM
Dkt. 48 SO**

NO. CAAP-19-0000507

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
SINAESEULA B. TUAOLO UTAI, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FFC-19-0000127)


<u>**SUMMARY DISPOSITION ORDER**</u>
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Sinaeseula B. Tuaolo **Utai** appeals from the Judgment of Conviction and Sentence entered by the Family Court of the First Circuit on June 14, 2019.[1] For the reasons explained below, we vacate the judgment and remand for further proceedings.

Utai was charged by complaint with Abuse of Family or Household Members in violation of Hawaii Revised Statutes § 709-906(1) and (5). The charge arose from an incident that took place on January 31, 2019, in the home where Utai lived with the complaining witness (**CW**). Utai pleaded not guilty. The family court granted Utai's motion in limine to prohibit evidence of statements made by Utai that were not disclosed by the State as

---

[1] The Honorable Kevin A. Souza presided.

required by Hawai‘i Rules of Penal Procedure (**HRPP**) Rule 16 (Discovery).

Jury trial began on May 14, 2019. The State called two witnesses, CW and his medical service coordinator, Nicole **Woodson**. CW testified that one morning in January 2019, Utai was in his room and found a marijuana pipe in his backpack. She walked to the kitchen. CW was in his room, sitting on the floor with his legs crossed. That's what he was taught to do when he got in trouble. He was "scared" because he knew Utai was "going do something to me." Utai returned to CW's room with a heavy metal spoon, 14 to 16 inches long. "She whacked me with it." Utai "whacked" the CW's hands, back, arms, ribs, and head with a metal spoon or a piece of wood. She then told CW to shower, and went to Walgreens. Woodson came to the house after Utai left, and CW showed Woodson "all the bruise [Utai] gave me." Woodson "called the cop." The police took pictures of CW's injuries. The photographs were admitted into evidence.

Woodson testified that she coordinated CW's dialysis treatments. She did an assessment at CW's home on January 31, 2019. CW showed Woodson bruises on his palms, left arm, and back. She felt two golf-ball sized lumps on his head. She called her supervisor and Adult Protective Services. Her supervisor told her to call the police. The police arrived within a half-hour of her call.

The State rested. The family court took a brief recess to allow the State to release its witnesses or have them stay for rebuttal. The deputy prosecuting attorney (**DPA**) was then apparently told by Woodson that Utai said she had disciplined CW for having a crack pipe. The DPA didn't disclose the new information to defense counsel.

When trial resumed, Utai took the stand. She testified that she was 53 years old, and CW was 43 years old. CW has Klinefelter's syndrome, and she took care of him. On January 31, she told CW to clean out his backpack. He refused. She grabbed the backpack and saw a "homemade pipe." She asked CW if it

belonged to him. He said "no." Then he started yelling, "that mine's [sic], give it back to me." He was aggressive and she never saw him like that. He pushed her. She was scared. She wanted to throw the pipe away. She walked out of CW's room, toward the kitchen. CW followed Utai into the kitchen where he pushed her again. He tried to open her hand, which held the pipe. She was very scared. She grabbed a "silver ladle spoon" from the sink. She swung the spoon "just so he can get scared and leave me alone." He was still trying to get the pipe but stopped when she told him, "if momma was -- was here she would be so -- so sad to see this." He turned around, mumbled something, and walked to his room.

On cross-examination, the DPA asked Utai:

> Q. So you did talk to Nicole [Woodson] that day?
>
> A. Yes.
>
> Q. Okay. Do you remember telling her that you hit [CW] because you were angry?
>
> A. No.
>
> Q. That you were disciplining him?
>
> A. No.
>
> Q. You never said that to her?
>
> A. No.

Utai didn't object to these questions. She rested after she completed her testimony.

The State then recalled Woodson as a rebuttal witness. The DPA asked:

> Q. After you phoned the police, did you have any interaction with the defendant?
>
> A. Yeah, later that day on my way to the car.
>
> Q. And during that interaction, did the defendant tell you why she did what she did?
>
> A. She said that she was disciplining [CW] for making -- for having a crack pipe.

Utai didn't object to these questions.

After jury instructions had been settled, Utai orally moved for a mistrial

> based on a violation of [HRPP] Rule 16, something that was brought up in and granted in motions in limine, specifically with regard to a statement that was brought out in -- by [Woodson] that was not previously disclosed to defense prior to trial which, in defense's view, is incredibly prejudicial, and deprived defense of the ability to speak to, well, my client prior to and address this possible concern.

The family court denied the motion for mistrial, but gave the defense an opportunity to reopen its case to allow Utai to testify "and provide for the context of" her conversation with Woodson. Utai then testified:

> Q. Did you at any point speak with Miss Woodson? Or when you were coming home, what did you observe?
>
> A. She was on the phone walking towards, you know, like 'cause we were on the same side of the road, she was walking towards me and was walking home. And then all she just -- I don't know if she hang up the phone or somebody was still there. So -- and then I -- then she said, Sina, I -- I already called the cops and I called Adult Protective Services, too. That's when I seen the car that my brother was in and he was hiding in the back. And then I said why is [CW] in that car? He never say.
>
> And then -- and then it finally dawned on me what Nicole was saying to me. But at that time I was trying to talk to her, she kept avoiding eye contact. I wanted to see what was going on, I said Nicole, can you tell -- wait, what did you just say? And Nicole said I called the cops because I seen bruises on [CW]. And she said that I have to go. That was it.
>
> Q. Okay. What was her demeanor like?
>
> A. She was rushed, it's like she didn't want to talk to me.
>
> Q. Okay. Did you at any point tell her that you were disciplining [CW]?
>
> A. I never did.
>
> Q. Okay.
>
> A. I never did.

The jury found Utai guilty as charged.  The Judgment of Conviction and Sentence was entered.  This appeal followed.  Utai contends that the DPA committed misconduct by violating HRPP Rule 16 and the order granting her motion in limine, and the family court erred by denying her motion for a mistrial.

"Prosecutorial misconduct" is a legal term of art referring to any improper action by a prosecutor.  State v. Williams, 146 Hawaiʻi 62, 72, 456 P.3d 135, 145 (2020).  Utai didn't object to the State's questions about her statements to Woodson.  But allegations of prosecutorial misconduct implicate a defendant's constitutional right to a fair trial.  State v. Hirata, 152 Hawaiʻi 27, 30, 520 P.3d 225, 228 (2022).

> [O]nce the defense establishes misconduct — objection or no objection — appellate review is the same:  After considering the nature of the prosecuting attorney's conduct, promptness or lack of a curative instruction, and strength or weakness of the evidence against the defendant, a reviewing court will vacate a conviction if there is a reasonable possibility that the conduct might have affected the trial's outcome.

Id. at 31, 520 P.3d at 229 (cleaned up).

The State concedes that the DPA violated HRPP Rule 16 and the family court order granting Utai's motion in limine by failing to disclose Utai's alleged statement to Woodson before Utai presented her case.  The DPA's questioning of Utai and Woodson about Utai's alleged statement, without first disclosing it to Utai, was misconduct.  See State v. Williams, 149 Hawaiʻi 381, 393-94, 491 P.3d 592, 604-05 (2021) (holding that the prosecutor's introduction of evidence of previously undisclosed statements by the defendant barred by the defense's motion in limine and in violation of HRPP Rule 16 constituted prosecutorial misconduct).  In cases such as this, where the defendant's credibility is particularly important, "the potential for prejudice is particularly evident where the improper comments specifically concerned the credibility of the testimony on which the case turned."  Id. at 393, 491 P.3d at 604 (cleaned up); see also, Hirata, 152 Hawaiʻi at 35, 520 P.3d at 233 ("In cases

reliant on the jury's credibility findings, misconduct attacking a defendant's credibility or bolstering a complainant's (or critical witness's) credibility is seldom harmless beyond a reasonable doubt."); State v. Underwood, 142 Hawaiʻi 317, 329, 418 P.3d 658, 670 (2018) (explaining that evidence of an offense isn't overwhelming "[w]hen a conviction is largely dependent on a jury's determination as to the credibility of a complainant's testimony").  The prosecutorial misconduct in this case was significant in relation to Utai's credibility.

As to the second factor, no curative instruction was given because Utai didn't object to the questions about her alleged statement to Woodson.  Rather than striking Woodson's testimony and instructing the jury to disregard it, the family court took what it characterized as a "curative measure" after Utai orally moved for a mistrial — it allowed Utai to reopen her case and testify about the context of her conversation with Woodson.  This only highlighted the conflicts between CW's and Utai's versions of what happened.

The third factor is the strength or weakness of the evidence against Utai.  CW and Utai were the only two witnesses to the incident.  They gave directly conflicting accounts of the events that caused CW's undisputed injuries.  In such cases it cannot be said that the evidence against the defendant is overwhelming.  See Hirata, 152 Hawaiʻi at 35, 520 P.3d at 233; Williams, 149 Hawaiʻi at 397, 491 P.3d at 608; Underwood, 142 Hawaiʻi at 329, 418 P.3d at 670.

Here, where the prosecutorial misconduct affected Utai's credibility — a crucial issue in the case — no curative instruction was given.  The family court's curative measure was not effective to mitigate the misconduct, and the evidence against Utai was not overwhelming.  We are obligated to vacate the Judgment of Conviction and Sentence.  We need not address Utai's argument that the family court erred by denying her motion for a mistrial.

For the reasons explained above, we vacate the "Judgment of Conviction and Sentence" entered by the family court on June 14, 2019, and remand for a new trial.

DATED:  Honolulu, Hawai'i, October 23, 2023.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
State of Hawai'i,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge